# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2695

_____

Marie DeMeo,                                   *
                                               *
      Plaintiff - Appellant,             *
                                               *   Appeal from the United States
v.                                             *   District Court for the
                                               *   Western District of Missouri.
State Farm Mutual Automobile                   *
Insurance Company,                             *
                                               *
      Defendant - Appellee.              *

_____

Submitted: April 17, 2012
Filed:  July 26, 2012

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Patrick McGinness, driving a vehicle owned by his adult daughter, negligently struck and injured Marie DeMeo. DeMeo obtained a $350,000 state-court judgment against McGinness. His daughter's insurer, American Family Insurance Company, paid its $100,000 policy limit under an owner's liability policy that covered McGinness as a permitted driver. State Farm Mutual Insurance Company insured McGinness under four liability policies issued for the cars he owned. Each policy provided coverage to McGinness when operating a non-owned vehicle such as his daughter's. Invoking the policies' "anti-stacking" provisions, State Farm paid the

per-person limit of one policy, $50,000. DeMeo filed this action to recover an additional $150,000, the combined limits of the other three policies.

In a prior appeal, we concluded that the anti-stacking provisions unambiguously applied to limit State Farm's contractual liability, but we remanded for the district court to determine whether the anti-stacking provisions are invalid, at least in part, because they conflict with the minimum insurance requirements of Missouri's Motor Vehicle Financial Responsibility Law ("MVFRL"), Mo. Rev. Stat. §§ 303.010 *et seq*. DeMeo v. State Farm Mut. Auto. Ins. Co., 639 F.3d 413, 417 (8th Cir. 2011). On remand, the parties submitted additional briefs; DeMeo argued that the MVFRL mandates payment of the $25,000 statutory minimum coverage for each policy and requested a judgment of $75,000. The district court[1] instead held that the anti-stacking provisions do not conflict with MVFRL requirements and granted summary judgment in State Farm's favor. DeMeo appeals. Reviewing the district court's interpretation of the insurance statutes *de novo*, we affirm. See Karscig v. McConville, 303 S.W.3d 499, 502 (Mo. banc 2010) (standard of review).

A public policy limitation on anti-stacking policy provisions has long been part of Missouri insurance law. After the enactment of mandatory minimum levels of uninsured motorist coverage, the Supreme Court of Missouri held: "when a statute requires that uninsured motorist coverage be included in any and every policy covering any motor vehicle," and the insured has paid for that coverage on two or more vehicles, public policy "prohibits the insurer from limiting an insured to only one of the uninsured motorist coverages provided." Cameron Mut. Ins. Co. v. Madden, 533 S.W.2d 538, 544-45 (Mo. banc 1976). However, this decision was "an exception to the normal rule of freedom to contract" that "should not go further than is strictly necessary to serve the statutory policy" that an insured not be denied "the

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

benefit of some of the coverage which was required and which had to be paid for." Hines v. Gov't Emp. Ins. Co., 656 S.W.2d 262, 265 (Mo. banc 1983); see Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. banc 2009); Noll v. Shelter Ins. Cos., 774 S.W.2d 147, 151-52 (Mo. banc. 1989).

Enacted in 1986, the MVFRL for the first time mandated that motor vehicle owners and operators maintain minimum levels of financial responsibility for damages arising out of their ownership or use of a motor vehicle. See Mo. Rev. Stat. § 303.025.1. Although the statute allows impractical self-insurance alternatives, see Mo. Rev. Stat. § 303.160.1(2)-(4), this financial requirement is most commonly satisfied by purchasing a "motor vehicle liability policy" that meets the requirements of Mo. Rev. Stat. § 303.190. See § 303.025.2. The MVFRL ensures that "people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators." Halpin v. Am. Family Mut. Ins. Co., 823 S.W.2d 479, 482 (Mo. banc 1992). Policy exclusions or coverage limitations are invalid to the extent they conflict with the MVFRL's minimum insurance requirements. Mo. Rev. Stat. § 303.190.6(4); Halpin, 823 S.W.2d at 481-83.

In the prior appeal, we determined that, if this issue is governed by contract principles, State Farm's anti-stacking provisions preclude the additional coverages in question.[2] Thus, for DeMeo to prevail on this appeal, she must establish that, as a matter of law, each State Farm policy was required to provide, and McGinness was required to pay for, the MVFRL-mandated coverage in question. She cannot clear this hurdle for a very basic reason: the MVFRL did not *require* that McGinness purchase liability insurance covering his operation of a non-owned vehicle whose

---

[2]Each policy provided: "If two or more vehicle liability policies issued by us to *you* . . . apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."

owner, like his daughter, maintained the required levels of financial responsibility. The mandate in Mo. Rev. Stat. § 303.025.1 is broad, but not that broad:

> 1. No owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, register or maintain registration of a motor vehicle, or permit another person to operate such vehicle, unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state. . . . Furthermore, *no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers the person's operation of the other's vehicle . . . .* (Emphasis added.)

Section 303.025.1 did compel McGinness as a car owner to purchase one or more motor vehicle liability policies providing the minimum levels of coverage for the four cars he owned. Section 303.190 spells out the policy requirements:

> 1. A "motor vehicle liability policy" as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance . . . .
>
> 2. Such owner's policy of liability insurance:
>
>> (1) Shall designate . . . all motor vehicles with respect to which coverage is thereby to be granted;
>>
>> (2) Shall insure the person named therein and any other person . . . using any such motor vehicle . . . with the [insured's] permission . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . subject to limits . . . with respect to each such motor vehicle [of] twenty-five thousand dollars because of bodily injury to or death of one person in any one accident . . . .

3. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed . . . by law for damages arising out of the use . . . of any motor vehicle not owned by him or her . . . subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

"Based on these definitions, a policy issued to an owner is an 'owner's policy' and must comply with the statutory mandates of § 303.190.2, while a policy issued to a non-owner is an 'operator's policy' and must comply with the statutory mandates of § 303.190.3." Karscig, 303 S.W.3d at 503 & n.7; accord Sisk v. Am. Family Mut. Ins. Co., 860 S.W.2d 34, 36 (Mo. App. 1993). DeMeo concedes, as she must, that State Farm issued four owner's policies to McGinness.

Section 303.190.2 does not *require* that State Farm include in an owner's policy coverage for the insured when driving a non-owned vehicle. But like McGinness, most car owners want such coverage for a variety of reasons, including the potentially severe MVFRL penalties if they should drive a non-owned vehicle with the knowledge that the owner has not maintained financial responsibility. See §§ 303.025.1 and .3, 303.041, 303.370.5. State Farm and other insurers routinely provide limited operator's coverages in their owner's policies. And the MVFRL has a provision expressly addressing this situation: "Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified . . . and such excess or additional coverage shall not be subject to the provisions of this chapter." § 303.190.7. As applied to the State Farm owner's policies at issue, "Section 303.190.7 manifests to insureds that they have no basis for expecting coverage in excess of the requirements of § 303.190.2." Halpin, 823 S.W.2d at 483. In other words, though consistent with the purpose of the MVFRL, McGinness's purchase of coverage when operating a non-owned vehicle like his daughter's was a matter of contract, not a mandate of Missouri public policy.

Relying on the Supreme Court of Missouri's decisions in Karscig and in American Standard Insurance Co. v. Hargrave, 34 S.W.3d 88, 91 (Mo. banc 2000), DeMeo argues that, because an operator's policy issued under § 303.190.3 must provide the MVFRL minimum coverages when the insured operates any non-owned car, "Missouri public policy requires a minimum liability coverage of $25,000 for every owner's and operator's policy issued in Missouri." This contention is contrary to a host of appellate decisions holding that an owner's policy that complies with § 303.190.2 may provide additional, operator's coverage(s) that are more limited than what an operator's policy must provide to comply with § 303.190.3. See First Nat'l Ins. Co. of Am. v. Clark, 899 S.W.2d 520, 522-23 (Mo. banc 1995); State Farm Mut. Auto. Ins. Co. v. Scheel, 973 S.W.2d 560, 566-67 (Mo. App. 1998); Shelter Mut. Ins. Co. v. Harter, 940 S.W.2d 555, 556-57 (Mo. App. 1997); Shelter Mut. Ins. Co. v. Ridenhour, 936 S.W.2d 857, 858-59 (Mo. App. 1997); Am. Family Standard Ins. Co. of Wis. v. Hamil, 862 S.W.2d 511, 513 (Mo. App. 1993); Sisk, 860 S.W.2d at 36; Schuster v. Shelter Mut. Ins. Co., 857 S.W.2d 381, 384-85 (Mo. App. 1993). In arguing that Karscig and Hargrave implicitly overruled these earlier decisions, DeMeo stretches Karscig and Hargrave, cases primarily involving policy exclusions, not stacking, far beyond their context.

In Hargrave, Ms. Hargrave and her children were injured while she was driving her father's vehicle. Her father's insurer paid the minimum limit required by the MVFRL, as Halpin required. Ms. Hargrave was also an insured under her husband's owner's policy. The Supreme Court of Missouri held that both insureds had purchased the required $25,000/$50,000 MVFRL limits, both insurers "had calculated and collected their premiums accordingly," and therefore both must "provide the minimum statutory liability coverage." 34 S.W.3d at 92.

Karscig, too, involved multiple policies issued to different insureds. Jennifer McConville, driving her parents' car with their consent, negligently injured Mark Karscig. The insurer paid the per-person policy limit under her parents' owner's

policy without dispute. But it denied coverage under a separate policy in which Jennifer was the named insured and another car owned by her parents was the declared vehicle, relying on both a family exclusion and an anti-stacking provision. The Supreme Court of Missouri held that the policy was an operator's policy because Jennifer did not own the declared vehicle; therefore, the exclusion was contrary to "the statutory mandates of § 303.190.3." Karscig, 303 S.W.3d at 503. Turning to the anti-stacking issue, the Court held that Jennifer "was covered by two distinct policies purchased by two separate parties." As each policy provided the minimum coverage mandated by the MVFRL, both coverages must be paid. Id. at 505.

Hargrave and Karscig doubtless stand for the proposition that, if an insured has paid for coverage while operating a non-owned car as part of an owner's policy, and if that coverage applies to a particular accident, public policy as reflected in the MVFRL requires that at least the mandatory minimum limit be paid even if the victim's damages are partially covered by policies issued to other insureds. Here, State Farm more than satisfied that obligation to McGinness by paying, not merely the MVFRL minimum $25,000, but the full $50,000 limit of one policy. But Hargrave and Karscig did not address the stacking question presented in this case -- whether State Farm violated Missouri public policy by using anti-stacking provisions to avoid charging McGinness for four times the minimum financial responsibility he was obligated to have *if* he drove an uninsured non-owned car.

As § 303.025.1 did not *obligate* McGinness to purchase this coverage for the accident in question, and as § 303.190.2 did not *obligate* State Farm to provide this coverage in its owner's policies, we believe the Supreme Court of Missouri would conclude that the public policy exception to the normal rule of freedom to contract does not preclude enforcing the anti-stacking provisions in this case. To the extent the MVFRL required that McGinness maintain financial responsibility for his operation of non-owned vehicles, it contained no requirement that he purchase multiple policies each individually satisfying the $25,000 minimum, and he did not

-7-

do so. DeMeo concedes that State Farm could have limited its mandatory non-owned vehicle coverage to $25,000 had it insured all four of McGinness's vehicles under a single owner's policy. See O'Rourke v. Esurance Ins. Co., 325 S.W.3d 395, 398 (Mo. App. 2010); Nat'l Union Fire Ins. Co. of Pittsburgh v. Maune, 277 S.W.3d 754, 760 (Mo. App. 2009). If the insured and insurer may contractually preclude multi-vehicle stacking within a single policy, we see no basis in Missouri public policy to conclude that the MVFRL demands stacking when there are multiple policies.

The judgment of the district court is affirmed.

_____