

# Missouri Court of Appeals

## Southern District

### Division Two

| | |
|---|---|
| PROGRESSIVE PREFERRED INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | |
| v. ) | No. SD35929 |
| ) | |
| JEFFREY MASON, ) | **Filed: September 10, 2019** |
| ) | |
| Defendant-Appellant, ) | |
| ) | |
| and ) | |
| ) | |
| TERRY OZBORN and MATTHEW OZBORN, ) | |
| ) | |
| Defendants. ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark A. Powell

**AFFIRMED**

Jeffrey Mason ("Injured Party") appeals the trial court's entry of summary judgment

in favor of Progressive Preferred Insurance Company ("Progressive") in a declaratory

judgment action in which Injured Party sought an additional $50,000 in liability coverage

from a Progressive automobile policy issued to Terry Ozborn ("Terry") and Matthew

Ozborn ("Matthew"), father and son.[1]   Injured Party claims the policy affords Terry up to

---

[1] Solely for the sake of clarity, we refer to the Ozborns by their first names. No familiarity or disrespect is intended.

$50,000 in additional liability coverage for Terry's permissive use of a vehicle he did not own – a Ford F150 ("the truck") owned by Matthew – based upon operator's liability coverage the policy provided to Terry for a vehicle Terry owned that was not involved in the accident.

Because the policy at issue satisfied the requirements of the Motor Vehicle Financial Responsibility Law ("MVFRL"[2]), and the trial court correctly ruled that no additional liability coverage was available due to the policy's unambiguous anti-stacking language, we must affirm.

**The Uncontroverted Material Facts**

Injured Party was hurt in February 2015 ("the accident") while assisting Terry and Matthew in moving a refrigerator out of a storage unit and into the back of a trailer attached to the truck. When Terry and Matthew moved a desk to access the refrigerator, slabs of concrete became dislodged and fell onto Injured Party. Injured Party claimed that the accident occurred due to the joint negligence of Terry and Matthew and arose out of their use of the truck.

Terry and Matthew were both named insureds in a single insurance policy issued by Progressive ("the Policy"), and the Policy was in effect at the time of the accident. The Policy provided liability coverage for two vehicles: (1) the truck being used at the time of the accident titled in Matthew's name; and (2) a 1994 Saturn SL2 4D ("the Saturn") titled in Terry's name that was not being used at the time of the accident. The Policy contained liability insurance limits of $50,000 per person and $100,000 per accident for bodily injury claims. The Policy also included an anti-stacking provision that limited Progressive's liability to the bodily injury liability limits for any single accident, regardless of the number

---

[2] *See* sections 303.010 – 303.370. Unless otherwise noted, all statutory citations are to RSMo 2016.

of vehicles or persons covered under the policy.  Injured Party claimed that his injuries exceeded $100,000, and he sought payment for those injuries via the bodily injury liability coverage provided by the Policy.

In exchange for a "**PARTIAL RELEASE**[,]" Progressive paid Injured Party $50,000, which represented "the full amount of one set of Bodily Injury Liability limits under [the Policy]," with the understanding that Injured Party could litigate or further negotiate his claim that he was entitled to a second set of bodily injury liability limits under the Policy.

Injured Party then filed a cross-petition for declaratory judgment[3] that alleged "he is entitled to recover the limits of $50,000 from the liability coverage for [Terry]'s liability on the coverage for the Saturn for [Injured Party]'s remaining claims for damages against [Terry]."  Progressive denied that it owed any additional liability coverage under the Policy beyond the $50,000 it had already paid, contending that the Policy does not provide additional liability coverage beyond its limit of $50,000 per person under the Policy's anti-stacking provisions.  The parties presented the issue to the trial court for its decision via competing motions for summary judgment.

In Injured Party's response to Progressive's motion, and in his own motion for summary judgment ("Injured Party's Motion for Summary Judgment"), Injured Party denied that his claim involved any stacking of liability coverages.  Rather, Injured Party claimed that the first $50,000 paid by Progressive was based upon the truck's liability coverage and "he was entitled" to a second "set[] of each-person Progressive limits from [the Policy] on

___

[3] Progressive had initiated the declaratory judgment case based upon a claim that Injured Party's injuries did not arise out of the ownership, maintenance, or use of the truck and were therefore excluded by the Policy. The parties eventually negotiated a resolution of the coverage issue, which resulted in Progressive tendering the $50,000 per person bodily-injury liability limits to Injured Party.

the basis that [the Policy] provided excess coverage with respect to [Terry] as owner of [the Saturn] listed on [the Policy]." In the alternative, Injured Party argued that he was entitled to an additional $25,000 as the minimum required by the MVFRL for the same reasons.[4]

The trial court granted Progressive's Motion for Summary Judgment and denied Injured Party's Motion for Summary Judgment, declaring "[the Policy] . . . does not owe a second set of $50,000 each-person liability limits for the bodily injury claim of [Injured Party] against [Terry] arising out of the February 23, 2015 accident." The trial court further concluded that "the unambiguous anti-stacking language in [the Policy] . . . applies, and the liability limits . . . do not stack."

### Analysis

> Summary judgment is appropriate when there is no dispute as to the material facts and the movant has established a right to judgment as a matter of law. *ITT Commercial Finance v. Mid–America Marine,* 854 S.W.2d 371, 381–82 (Mo. banc 1993). In the present case, as the parties concede, there is no dispute as to the material facts. Both issues involve only the interpretation of an insurance policy, which is a question of law that this Court reviews de *novo. See McCormack Baron Management Services, Inc. v. American Guarantee & Liability Ins. Co.,* 989 S.W.2d 168, 171 (Mo. banc 1999).

*Karscig v. McConville*, 303 S.W.3d 499, 502 (Mo. banc 2010).

*Point 1*

Injured Party's first point claims

> [t]he trial court erred in granting summary judgment in favor of Progressive based on the anti-stacking provision in [the Policy], because the MVFRL requires all automobile liability insurance policies issued in this state to provide owner's coverage or operator's coverage as defined in Section 303.190 RSMo., in that [the Policy] herein provided both types of coverage and the undisputed material facts establish as a matter of law that [the Policy] provides an additional $50,000 excess limit under the operator's coverage issued to Terry on his Saturn for any claims against him individually arising out of his permissive but negligent use of a vehicle he did

---

[4] The trial court's judgment did not explicitly address this alternative claim, but it was implicitly denied by its ruling in favor of Progressive's claim that the $50,000 already paid was all that was due.

4

not own, and thus [Injured Party] is not stacking, adding, combining[,] or multiplying the same type of coverage with itself.

We disagree.

Injured Party argues that, by choosing to combine what would otherwise have been two separate policies – one for the truck and one for the Saturn – into a single insurance contract, Progressive "chose to list both Matthew and Terry as named insureds and provided them both with owner's coverage and operator's coverage." Injured Party claims the operator's coverage for Terry on the Saturn "is a separate and distinctly different type of coverage from the protection Terry received under the [truck]'s owner's coverage as a permissive user insured for his use of [the truck]."

That argument fails to recognize that the Policy explicitly and unambiguously[5] restricts coverage for bodily injury to a single $50,000 payment per person, per accident, regardless of the number of insureds or number of covered autos involved.

In addition to listing Matthew and Terry as named insureds, the truck and the Saturn as covered autos, and a $50,000 per person/$100,000 per accident limit of liability to others for bodily injury, the pertinent Policy terms are as follows:

**Outline of general policy coverages**

**All limits listed below are subject to all terms, conditions, exclusions and applicable reductions described in the policy.**

> General policy coverages apply to all listed vehicles unless indicated otherwise. With the exception of Uninsured Motorist coverage, no limit of liability shall be multiplied, added to itself, or combined or stacked with itself. The Uninsured Motorist coverage limit may be stacked with itself only to the extent required by law.

>           . . . .

**LIMITS OF LIABILITY**

---

[5] Injured Party does not claim that any language in the Policy is ambiguous.

5

Subject to the General Definitions, to all the terms, conditions, and limitations of Part VI – Duties In Case Of An Accident Or Loss, to all the terms, conditions, and limitations of Part VII – General Provisions, and to all the terms, conditions, exclusions, limitations, and applicable reductions described in this Part I, the limit of liability shown on the **declarations page** for Liability Coverage is the most **we** will pay regardless of the number of:

1. policies issued by **us**;
2. claims made;
3. **covered autos**;
4. **insured persons**;
5. lawsuits brought;
6. vehicles involved in the accident; or
7. premiums paid.

In no event shall the limit of liability be multiplied, added to itself, or combined or stacked with itself.

If **your declarations page** shows a split limit:

1. subject to the General Definitions, to all the terms, conditions, and limitations of Part VI – Duties In Case Of An Accident Or Loss, to all the terms, conditions, and limitations of Part VII – General Provisions, and to all the terms, conditions, exclusions, limitations and applicable reductions described in this Part I, the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;

. . . .

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**[.]

. . . .

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

Based upon these Policy provisions, the trial court correctly concluded that the "unambiguous anti-stacking language in [the Policy] . . . applies, and the liability limits under [the Policy] do not stack."

6

Injured Party nonetheless argues that the Policy contains two insuring agreements which provide both owner's coverage *and* operator's coverage for each Matthew *and* Terry and that Progressive "should not be able to deny the operator's coverage protection it wrote for Terry as a named insured for the Saturn simply because Terry is also provided protection as a permissive user of [the truck] under Matthew's owner's coverage." Injured Party claims that

> [n]othing in either insuring agreement plainly states nor even suggests that when there are two named insureds who are each jointly and severally liable for a single accident that they will not each remain fully insured for their individual liability separately and to the full extent of the stated limits of liability insurance coverage under both applicable insuring agreements, which promise each named insured the protection of both operator's and owner's policy coverage.

The MVFRL includes provisions for two types of liability policies, an owner's policy or an operator's policy, *either of which* will satisfy the requirements of the MVFRL. *Wilson v. Traders Ins. Co.*, 98 S.W.3d 608, 616 (Mo. App. S.D. 2003); section 303.190.1. Injured Party does not argue that the Policy fails to satisfy either of these requirements, rather, he incorrectly argues that, based upon its particular language, the Policy *must* satisfy *both*.

Even if the Policy language afforded the "excess" liability coverage Injured Party claims he is due, "excess insurance coverage is not subject to the minimum financial requirements of section 303.190[.]" *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 92 (Mo. banc 2000); *see also Wilson*, 98 S.W.3d at 616; section 303.190.7. Rather, "[t]he public policy of this state is satisfied when there is an owner[']s policy of liability insurance sufficient to meet the minimum requirements of Missouri's financial responsibility law." *First Nat'l Ins. Co. of Am. v. Clark*, 899 S.W.2d 520, 523 (Mo. banc

1995).  "What the MVFRL requires is that each valid owner's *or* operator's policy provide the minimum liability limits specified, $25,000 for bodily injury to or death of one person in any one accident and $50,000 for bodily injury to or death of two or more persons in any one accident."  ***Hargrave***, 34 S.W.3d at 92 (emphasis added).  And the $50,000/$100,000 provided in the Policy is twice the minimum liability coverage required by the MVFRL.

The ***Karscig*** case Injured Party nearly exclusively relies upon as supporting his position is distinguishable.  The Supreme Court of Missouri in ***Karscig*** "held that when there are two policies covering a single automobile, both an ownership policy and an operator's policy, anti-stacking provisions contained in the policies are void and both must pay the statutory minimum required by the MVFRL."  ***O'Rourke v. Esurance Ins. Co.***, 325 S.W.3d 395, 398 (Mo. App. E.D. 2010) (citing ***Karscig***, 303 S.W.3d at 501).  But the ***Karscig*** decision was based upon the fact that the driver had a separate operator's policy that attempted to exclude coverage for injuries arising out of her use of a vehicle she did not own – thereby failing to satisfy the MVFRL's requirements for an operator's policy.  ***Karscig***, 303 S.W.3d at 504.

As subsequent cases have recognized, the defining characteristic of the ***Karscig*** case was that it involved *two separate insurance policies*, a situation not present here.  ***Allstate Prop. & Cas. Ins. Co. v. Davis ex rel. Davis***, 403 S.W.3d 714, 716–17 (Mo. App. W.D. 2013).  ***Davis***'s observations in this regard are particularly relevant to the instant case.

> Conversely [to the facts in *Karscig*], in the case presently at bar, there is no separate operator's policy at issue that would require Allstate to provide the minimum liability coverage under the MVFRL.  Rather, this case involves a single policy issued to Simpson's Parents under which Allstate has already provided the minimum liability coverage for Appellant's bodily injuries.  Thus, the Court's holding in *Karscig* places no obligation upon Allstate to provide additional liability coverage to Simpson.

8

*Id.* at 718.

Here, as in ***Davis***, there is no separate operator's insurance policy that would require that separate policy to provide additional coverage under the MVFRL. *See also **O'Rourke***, 325 S.W.3d at 398 (declining to extend ***Karscig*** to a situation where one policy covered two vehicles, only one of which was involved in the accident). While Injured Party may be correct that the Policy at issue is both an operator's policy and an owner's policy,[6] we need not decide that issue as it "is inconsequential in determining whether the policy should not be enforced as written as being violative of the MVFRL." ***State Farm Mut. Auto. Ins. Co. v. Scheel***, 973 S.W.2d 560, 567 (Mo. App. W.D. 1998). Because the Policy complies with the relevant owner's provisions in the MVFRL[7] – and Injured Party makes no argument otherwise – it need not also comply with the MVFRL's operator's requirements. ***Clark***, 899 S.W.2d at 523.

In ***Scheel***, the Eastern District summarized the issue as follows:

> Because we find the policy in question here is both an owner's and operator's policy and there is no challenge to any provision as to its owner's policy coverage as violating the MVFRL, then the fact that the policy's exclusion for the unauthorized use of a non-owned vehicle may violate the MVFRL as to an operator's policy only is inconsequential in determining whether the policy should not be enforced as written as being violative of the MVFRL.

973 S.W.2d at 567 (footnote omitted). *See also **Sisk v. American Family Mut. Ins. Co.***, 860 S.W.2d 34, 35-36 (Mo. App. E.D. 1993) (noting that nothing in the MVFRL requires a policy to be both an owner's *and* an operator's policy); ***Shelter Mut. Ins. Co. v. Ridenhour***, 936 S.W.2d 857, 858 (Mo. App. E.D. 1997) (finding that policy did not violate MVFRL

---

[6] The Court in ***Karscig*** stated that it did "not know of a situation in which a policy can be both an owner's and an operator's policy[,]" 303 S.W.3d at 503 n.7, but our high court has also stated that "[m]any policies . . . contain provisions making them both an owner's and an operator's policy." ***Clark***, 899 S.W.2d at 523.

[7] The requirements for an owner's policy are set forth in section 303.190.2, and those applicable to an operator's policy are contained in subsection .3 of that section.

where it met the requirements for an owner's policy but not an operator's, because, "[i]n order to comply with the MVFRL one must have a policy which is either an owner's policy or an operator's policy").

Injured Party contends that, under **Karscig**, he would be entitled to two liability payments if only these identical coverages at issue were contained in two separate policies, and therefore Progressive must not be allowed to escape its contractual duties simply by combining the coverages into one policy. Even if the first portion of that contention were correct (a question we need not decide here), "[p]arties to an 'insurance contract may agree to such terms and provisions as they see fit to adopt, subject only to the requirements that the contract is lawful and reasonable.'" **Sisk**, 860 S.W.2d at 36 (quoting **American Family Mut. Ins. Co. v. Ward**, 789 S.W.2d 791, 795 (Mo. banc 1990)).

Here, both Matthew and Terry and their respective vehicles were covered in a single insurance policy, the language of which prohibited the stacking of liability coverage. While the result is not a desirable one for Injured Party under the unique circumstances of the accident that occurred in this case, the contract is not unlawful, and we must therefore enforce its terms as written.

Point 1 fails.

*Point 2*

Point 2 claims

> [t]he trial court erred in granting summary judgment in favor of Progressive based on the anti-stacking provision in Progressive's insurance policy, because the MVFRL requires all liability insurance policies issued in this state to provide at least $25,000 per person of bodily injury liability coverage on each vehicle it insures, in that even after Progressive paid its primary coverage limit of $50,000 for [Matthew's and Terry's] joint and several liability arising from their use of [the truck], Progressive still owes at least the MVFRL's required minimum liability limit of $25,000 as excess

operator's coverage provided on Terry's Saturn for any claims against him individually arising out of his permissive but negligent use of a vehicle he did not own.

As already noted, the MVFRL requires that each "owner's or operator's policy provide the minimum liability limits specified, $25,000 for bodily injury to or death of one person in any one accident and $50,000 for bodily injury to or death of two or more persons in any one accident." *Hargrave*, 34 S.W.3d at 92; section 303.190.1. As Injured Party concedes, he received $50,000 in bodily injury liability payments under the Policy, which insured both Matthew and Terry. Having already received $50,000 -- more than the minimum amount required by the MVFRL -- and any additional payment for bodily injury being unambiguously excluded by the Policy, Injured Party is not entitled to an additional $25,000.[8]

Point 2 is denied.

### Point 3

Point 3 claims the trial court erred in denying Injured Party's Motion for Summary Judgment. Injured Party rightly acknowledges that "[t]he decision in this case is simply binary." Having concluded that the trial court did not err in granting Progressive's motion for summary judgment, Point 3 fails accordingly.

The judgment of the trial court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

---

[8] Injured Party acknowledges that his arguments supporting Point 2 rely "on the same statutes, cases and logic as set forth in Point 1[.]"